Craig Borison (SBN 248387)
124 E. Olive Ave.
Burbank CA 91502
(818)256-5549
craig@borisonlaw.com
Attorneys for Plaintiff
Sheila V. Price

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA V. PRICE,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 8:18-CV-00340<br><br>**COMPLAINT -**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Sheila Price ("Plaintiff"), by and through her attorneys, brings the following Complaint against Experian Information Solutions, Inc. ("Experian" or "Defendant").

**INTRODUCTION**

1. Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress and the States of California and Illinois have chosen to regulate the procurement, use, and content of those reports through the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the

1

Complaint

Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. § 505/1, *et seq.* ("ICFA"), the California Investigative Consumer Reporting Agencies Act, Ca. Civ. Code § 1786, *et seq.* ("ICRAA"), and the California Unfair Competition Law, Ca. Bus. and Prof. Code § 17200, *et seq.*, ("UCL").

2. Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA, as well as California and Illinois law.

3. Defendant has willfully violated the FCRA, ICRAA and ICFA by falsely accusing Plaintiff of using a Social Security Number ("SSN") that belongs to someone else. This misreporting led to lost job opportunities.

4. Further, Defendant failed to correct the information in Plaintiff's report after she disputed it.

## THE PARTIES

5. Plaintiff Sheila Price is an individual person and a resident of Calumet City, Illinois.

6. Defendant Experian is a "person" and "consumer reporting agency" as defined by 15 U.S.C. § 1681a(b). Experian is headquartered at 475 Anton Boulevard, Costa Mesa, CA 92626.

7. Because Defendant provides consumer reports in Illinois regarding Illinois residents, it is obligated to abide by the Illinois law.

8. In the alternative, because Defendant is a California corporation, it is obligated to follow California law. There is a sufficient aggregation of contacts to

the claims of the putative class for the application of California law to be proper, and the interests of other states does not outweigh California's interest in having its law applied.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

10. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the FCRA claims in this matter, as they present a federal question. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the ICFA and UCL claims, as they are part of the same case or controversy.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendant resides in this District, and witnesses and documents relevant to this matter are located in this District.

## STATUTORY BACKGROUND

12. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for employment or housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

13. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

14. 15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of the information they report. This section applies to CRAs which sell information to other CRAs. As discussed below, Defendant routinely violates the FCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports.

15. 15 U.S.C. § 1681i(a)(1) requires consumer reporting agencies to conduct a reasonable reinvestigation of all information disputed by a consumer. This section applies to CRAs which sell information to other CRAs.

16. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) makes it illegal to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact..." 815 Ill. Comp. Stat. § 505/2.

Complaint

17. Like the FCRA, the California Investigative Consumer Reporting Agencies Act (ICRAA) requires investigative consumer reporting agencies, such as Defendant, to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports.

18. The California Unfair Competition Law (UCL) bars unlawful, unfair or fraudulent business acts.

### ALLEGATIONS RELATING TO PLAINTIFF

19. In April 2016, Plaintiff applied for employment with non-party Arise Virtual Solutions, Inc. ("Arise"). As part of that application, Arise purchased a consumer report about Plaintiff from non-party First Advantage Background Services Corp ("First Advantage"). (*See* Ex. A, pp. 15-19.)

20. In turn, First Advantage purchased information from Defendant regarding Plaintiff's SSN, which First Advantage included on its report to Arise. With respect to the SSN-related information at issue, First Advantage cannot, and does not, edit the information it receives from Defendant.

21. The information that First Advantage received from Defendant was reported in the "Social Security Verification" section of First Advantage's report.

22. The "Social Security Verification" information Defendant provided to First Advantage, however, was flawed. Specifically, Defendant incorrectly reported that there was a "HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO ANOTHER CONSUMER."

23. Based on Defendant's conclusion that there was a "high probability" that the SSN Plaintiff provided belonged to someone else, First Advantage reported that Plaintiff was "Ineligible" to work for Arise. (*Id*.)

24. Experian's reporting was inaccurate. The SSN Plaintiff provided was her own.

25. This inaccurate reporting caused Plaintiff's employment application to Arise to be unsuccessful, causing loss of income and emotional distress.

26. Plaintiff has attempted to apply to multiple positions with Arise, and each time her application has been thwarted by Defendant's misreporting regarding Plaintiff using someone else's SSN.

27. Defendant's labeling of consumers as having a "high probability" of using someone else's SSN is antithetical to the FCRA's mandate of maximum possible accuracy. Whether a person is using their own SSN or not is a binary factual question. An accurate answer to that question can never be supplied by a probability.

28. Defendant determines whether a SSN has a high probability of belonging to another consumer by using an algorithm to determine whether the SSN is most strongly associated with the consumer who is the subject of the report, or with another file in Defendant's vast database. The strength of the association is determined by the number of times a SSN appears in a given individual's file.

6
Complaint

29. If, for example, Sally Smith has a SSN which is similar to the SSN for John Jones, and Sally's bank misreports her account as being associated with John Jones' SSN, it may be that Jones's SSN is "more strongly associated with" Sally Smith than it is with Mr. Jones. This is particularly true if Mr. Jones does not frequently use credit, in which case there will not be many accounts in Mr. Jones's credit file which are associated with his SSN.

30. Defendant's use of the "most strongly associated with" test to determine whether someone is using a SSN that belongs to someone else is unjustifiably error prone. Typos, identity theft, differing levels of credit usage and a myriad of other problems can cause one person's SSN to be "more strongly" associated with another person in Defendant's database. Using the prevalence of a SSN as a basis for identifying the "probability" that one person is fraudulently using someone else's SSN is not a reasonable procedure for assuring maximum possible accuracy.

31. Further, before labeling consumers as having a "high probability" of using someone else's SSN, Defendant does not utilize reasonable procedures to investigate this conclusion. For example, Defendant does not reach out to the consumer to seek additional proof of identity or information on when and how the individual acquired their SSN.

32. For example, Defendant could require its customers to ask applicants when or where applicants' SSNs were issued. Defendant could also inform

7

Complaint

consumers of a potential SSN mismatch and ask them to provide proof that the SSN they submitted belongs to them, such as a copy of a Social Security card.

33. At the time of the report, Plaintiff had no fraud alerts or other indicia of fraud on her Experian report.

34. At least one other suit has been brought alleging that Defendant provided First Advantage with incorrect and misleading information regarding the "probability" that a given consumer was using a SSN that belongs to someone else. *Grimm v. First Advantage Background Services Corp.*, No. 1:17-cv-01967 (D. Md.).

35. There is no requirement in the FCRA that Defendant create or sell a product purporting to establish the probability that one consumer is using a SSN belonging to another consumer.

36. SSN validation is available directly from the Social Security Administration ("SSA") once an individual has been hired. However, the SSA does not make SSNs publically available to employment screening firms.

37. Defendant knows that without access to information from the SSA it cannot produce accurate pre-employment SSN screening. Yet, rather than lose out on potential income, Defendant chooses to sell its unreliable product anyway.

38. Defendant, as well as Defendant's competitors in the employment screening industry, are well aware of the risks of inaccuracy that come with pre-employment SSN screening.

39. Many of Defendant's competitors either do not sell SSN screening products at all, or if they do, include a disclaimer which is substantially more detailed than Defendant's statement about probability. For example, one of Defendant's competitors includes the following disclaimer on its reports:

> The purpose of Social Security Trace/Address Locator report is to locate jurisdictions for purposes of expanding the scope of the criminal background check. The Social Security number provided by the applicant is not checked against the Social Security Administration database since the Social Security Administration database generally is not accessible for pre-employment screening purposes. In determining whether a number appears to be validly issued, SSN protocols are applied but please note that due to the randomization of the issuance of social security numbers, any conclusion regarding whether the number is valid may not be accurate for recently issued numbers.

40. Defendant knows the same facts as the competitor quoted above, but chooses to report unreliable and inaccurate SSN information regardless.

41. The statement that the SSN provided by a consumer has a "high probability" of belonging to someone else is inherently incompatible with the FCRA's requirement that consumer reporting agencies follow reasonable procedures to assure "maximum possible accuracy" of the information they report.

42. Defendant's probabilistic statement is also literally false. The probability that Plaintiff is using someone else's SSN is zero. She is using her own SSN.

43. Nor is Defendant's statement reasonable in the first instance. Given that the SSA does not make SSNs available to pre-employment screening

9

Complaint

agencies, Defendant cannot possibly have conducted, or have access to, any studies or other evidence regarding the probability that people who are flagged by Defendant's algorithm are, in fact, using someone else's SSN. Absent this evidence, Defendant cannot make any reasonable claims which purport to be based on probabilities.

44. On May 19, 2017, Plaintiff sent First Advantage a letter disputing the results of her background check. (Ex. C.) This letter made it clear that Plaintiff's SSN belongs to her, and enclosed a copy of her Social Security card. (*Id.*)

45. First Advantage forwarded Plaintiff's dispute to Defendant, who failed to correct the inaccurate reporting, informing First Advantage that the original reporting was accurate.

46. In response to Plaintiff's letter, and Defendant's failure to correct its inaccurate reporting, First Advantage informed Plaintiff it would not change her background report. (Ex. D.)

47. Plaintiff has expended significant time and effort in attempting to determine why she was labeled as ineligible for employment, and attempting to fix the problem, including retaining counsel and sending dispute letters to First Advantage. The fact that Defendant has refused to correct its reporting has caused Plaintiff significant distress, because, in her continued job search, she never knows when an employment opportunity could be lost due to Defendant's misreporting.

48. At the time that Defendant verified its original information, regarding the purported invalidity of Plaintiff's SSN, Defendant did not have legal access to the SSA's database. Defendant was thus unable to meaningfully verify the accuracy of the information it reported.

49. Defendant clearly failed to complete a meaningful reinvestigation of the information disputed by Plaintiff, as required by 15 U.S.C. § 1681i(a). Plaintiff's letter spelled out precisely what the inaccuracy in her report was, and included all relevant documentation. Defendant, despite receiving this information from First Advantage, failed to correct its own error.

## COUNT I
## 15 U.S.C. § 1681e(b)
### *Failure to Follow Reasonable Procedures*

50. Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to avoid reporting false information regarding SSNs.

51. The foregoing violations were negligent.

52. The foregoing violations were willful.

53. Defendant acted in negligent, deliberate, and reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681e(b). Defendant's negligent and willful conduct is reflected by Paragraphs 18-48 above and, *inter alia*, the following:

   a. Defendant takes no action to determine if the information it is reporting regarding the high probability that the consumer is using

someone else's SSNs is accurate, and has not established any reliable procedures to determine this probability;

b. Defendant knows that its reporting regarding SSNs is not to be relied upon. Rather than stating facts, it states that there is a high probability that an individual is not using their own SSN. This language is a transparent effort to avoid the requirements of the FCRA;

c. Defendant's apparent method of determining which consumer is most strongly associated with an SSN is prone to error. Defendant could have used procedures to ensure accuracy of this information, such as seeking additional information from the consumer, but failed to do so;

d. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

e. Defendant's conduct is inconsistent with the Federal Trade Commission's ("FTC") longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

f. Defendant knew or had reason to know that Defendant's conduct violated the FCRA; and

g. By failing to adopt reasonable procedures, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

54. Defendant's conduct caused Plaintiff to lose a job opportunity, causing economic harm.

55. Plaintiff is entitled to actual damages, and statutory damages of not less than $100 and not more than $1,000 per violation. Plaintiff is also entitled to punitive damages and to recover costs and attorneys' fees.

//

//

12

Complaint

# COUNT II
## 15 U.S.C. § 1681i(a)(1)
### *Failure to Conduct a Reasonable Reinvestigation*

56. Defendant failed to comply with 15 U.S.C. § 1681i(a)(7) by failing to conduct a reasonable reinvestigation after receiving a dispute, which was forwarded to it by First Advantage.

57. The foregoing violations were negligent.

58. The foregoing violations were willful.

59. Defendant acted in negligent, deliberate, and reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681i(a)(a). Defendant's negligent and willful conduct is reflected by Paragraphs 18-48 above and, *inter alia*, the following:

   a. When asked to reinvestigate determinations that a SSN likely belongs to another consumer, Defendant simply reiterates the results of its original failed analysis. It undertakes no additional steps to verify the SSN;

   b. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

   c. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

   d. Defendant knew or had reason to know that Defendant's conduct violated the FCRA;

   e. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

Complaint

60. Plaintiff is entitled to actual damages, and statutory damages of not less than $100 and not more than $1,000 per violation. Plaintiff is also entitled to punitive damages and to recover costs and attorneys' fees.

## COUNT III
## 815 Ill. Comp. Stat. § 505/2
### *Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act*

61. Plaintiff incorporates the paragraphs above.

62. The ICFA makes it illegal to use "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact..." 815 Ill. Comp. Stat. § 505/2.

63. Defendant's practice of declaring that individuals have a "high probability" of using someone else's SSN is both unfair and deceptive, because (1) Defendant's methods for making this determination are inherently unreliable, and (2) whether someone is using their own SSN is a binary question – answering it with a probability is always inaccurate.

64. Defendant's practices harm consumers because they damage consumers' employment prospects, and they are consumer-oriented because they communicate damaging information about consumers at a time when they are applying for employment.

65. Plaintiff is entitled to injunctive relief and reasonable attorney's fees and costs. 815 Ill. Comp. Stat. § 505/10a.

### COUNT IV: Cal. Bus. & Prof. Code § 1786.20
### California Investigative Consumer Reporting Agencies Act (ICRAA)

66. Plaintiff incorporates the paragraphs above.

67. Plaintiff asserts this count in the alternative to Count III, above.

68. Defendant is an investigative consumer reporting agency as defined by the ICRAA, and Defendant was required to adhere to the requirements of the ICRAA.

69. The ICRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported. Cal. Civ. Code § 1786.20(b).

70. For all the reasons listed at ¶¶ 48-54, by asserting that Plaintiff's SSN was likely not her own, Defendants failed to follow reasonable procedures, and reported inaccurate information.

71. Plaintiff is entitled to injunctive relief and to the recovery of attorneys' fees and costs.

### COUNT V: Cal. Bus. & Prof. Code § 17200
### Unlawful, Unfair, or Fraudulent Conduct

72. Plaintiff incorporates the paragraphs above.

73. Plaintiff asserts this count in the alternative to Count III, above.

74. Defendant was required to adhere to the requirements of the UCL.

75. By asserting that Plaintiff's SSN was likely not her own, Defendants diminished Plaintiff's employment opportunities.

76. Defendants' inaccurate reporting constituted unlawful, unfair, and fraudulent business practices.

77. Defendants' practices were unlawful because they violate the FCRA and/or the ICRAA.

78. Defendants' practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to falsely represent that consumers' SSNs are likely not their own.

79. Defendants' practices were fraudulent because the report recipients were deceived and/or were likely to be deceived by Defendants' inaccurate representations that Plaintiff was likely an identity thief.

80. The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

81. Plaintiff is entitled to injunctive relief and to the recovery of attorneys' fees and costs.

## PRAYER FOR RELIEF

82. WHEREFORE, Plaintiff prays for relief as follows:

   a. Declaring that Defendant violated the FCRA, ICFA, ICRAA and UCL;

b. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

c. Awarding actual, statutory and punitive damages;

d. Granting injunctive relief; and

e. Awarding reasonable attorneys' fees and costs; and

f. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

89. Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ Craig Borison

Dated: February 28, 2018

Craig Borison (SBN 248387)
124 E. Olive Ave.
Burbank CA 91502
(818)256-5549
craig@borisonlaw.com
*Attorney for Plaintiff*

Complaint